## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **Chapter 13** |
| | : | |
| **Ronald William Kipps,** | : | **Case No. 5:19-01662-MJC** |
| | : | |
| Debtor. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| **Ronald Kipps,** | : | |
| | : | |
| Plaintiff, | : | **Adversary Proceeding** |
| | : | **No. 5:19-00064-MJC** |
| **v.** | : | |
| | : | |
| **Margaret Stincavage-Kipps,** | : | |
| | : | |
| Defendant. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# O P I N I O N

## I. INTRODUCTION

Before the Court is the Defendant's motion for summary judgment on the Debtor/Plaintiff's claim for damages relating to the Defendant's alleged willful violation of the automatic stay under 11 U.S.C. §362. The Plaintiff alleges that: (i) pre-petition, the Defendant caused the Debtor's bank accounts to be frozen and post-petition, refused to release the account; and (ii) in a state court divorce proceeding between the parties the state court, post-petition, exercising "concurrent jurisdiction" found that the automatic stay did not apply and ordered that certain deeds be executed transferring ownership from the Plaintiff to the Defendant based upon a prior state court order. The Defendant argues that her actions were proper and that she is entitled to summary judgment because (i) there is no obligation to release a pre-petition levy, and (ii) the Defendant cannot be found liable for a willful stay violation where the state court specifically found that the stay did not apply.

For the reasons that follow, the Court concludes there are no issues of material fact, the Defendant did not have a post-petition obligation to release the bank accounts, and the state court correctly determined that the execution of the deeds was a ministerial act that was not subject to the automatic stay. Accordingly, the Defendant is entitled to summary judgment on her motion.

## II. PROCEDURAL HISTORY

On April 22, 2019, Plaintiff Ronald William Kipps ("Plaintiff" or "Debtor") filed his Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. On May 24, 2019, the Plaintiff filed this Adversary Proceeding against his former spouse, Defendant Margaret Stinavage-Kipps[1] ("Defendant" or "Defendant/Wife") for alleged violations of the automatic stay for refusing to release bank accounts that were frozen pre-petition and participating in a state court proceeding post-petition relating to the conveyance of former marital property and contempt proceedings. Dkt. # 1.[2] The Plaintiff seeks damages in excess of $25,000.00, reimbursement of counsel fees, and injunctive relief.

On June 7, 2019, the Plaintiff filed an Emergency Motion for Immediate Injunctive Relief ("Motion for Injunctive Relief"), Dkt. # 6, requesting that all state court proceedings be stayed; the frozen bank accounts be released to the Debtor; the Defendant be enjoined from pursuing the execution and filing of the subject deeds; and the Defendant be enjoined from transferring or seizing any Estate property. On June 14, 2019, the Defendant filed an Answer and Request for Sanctions and Relief from Automatic Stay. Dkt. # 9. On June 17, 2019, Judge Robert N. Opel (now retired) held a hearing on the Motion for Injunctive Relief. After making findings on the record, Judge Opel entered an Order dated June 17, 2019, Dkt. # 12, granting in

---

[1]     The Plaintiff appears to have misspelled the Defendant's surname when he instituted this proceeding.

[2]     An amended complaint was filed on October 15, 2020 ("Amended Complaint"). Dkt. # 47.

2

part and denying in part the Motion for Injunctive Relief. Judge Opel found that the Plaintiff could suffer irreparable harm if the frozen bank accounts were not released. However, relying on the Rooker-Feldman Doctrine, the Court found that the Plaintiff had no reasonable likelihood of prevailing on a challenge to the 2017 Equitable Distribution Order entered in the pending state court divorce action and denied all other injunctive relief. Dkt. # 12, ¶ 11.[3] The Court found that Rooker-Feldman "provides that this Court lacks subject matter jurisdiction over challenges to certain final state court judgments." Id. (citing Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010)).

On November 5, 2020, the Defendant filed an answer to the Amended Complaint ("Answer"), Dkt. # 49, which asserted that (i) the pre-petition levy and refusal to release the levy post-petition was not a violation of the stay, and (ii) the State Court properly moved forward post-petition to award and convey the subject real property to the Defendant.

On July 1, 2021, the Defendant filed a Motion for Summary Judgment ("Motion"). Dkt. # 71. The parties have filed briefs and pursuant to Local Bankruptcy Rules 7002-1 and 7056-1 which incorporate Local Rule 56.1 of the District Court, the Plaintiff and the Defendant each filed a Statement of Material Facts. See Dkt. #'s 82 and 85-1. Except for the issue of damages, there does not appear to be any dispute as to the operative and material facts.

### III. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania

---

[3]     The Rooker-Feldman doctrine applies in certain circumstances where a federal lawsuit follows a state court suit and prohibits a federal court from subsequently exercising jurisdiction. The doctrine takes its name from two cases in which the Supreme Court has applied it to defeat federal subject-matter jurisdiction: Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983).

dated March 11, 2016.  The claims asserted in the Amended Complaint are core proceedings pursuant to 28 U.S.C. §157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. §1409(a).

## IV.  FACTS[4]

The material facts here are not in dispute.  From the parties' submissions the Court finds the following facts to be relevant:

1.  On April 22, 2019, the Plaintiff/Debtor filed his Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code.

2.  On June 14, 2019, the Debtor filed his Schedules.  BK Dkt. # 28.  On his Schedule A, he lists several parcels of real property having a value of $1,659,300.00.  On Schedule I, Debtor indicates that he is a "Retired-Farmer" and his sole income is $770.00 from social security benefits and $497.00 from a "Trust Fund" for a total monthly income of $1,267.00.

3.  At the time of the bankruptcy filing, the Plaintiff/Debtor and the Defendant/Wife were parties to a pending divorce action in the Court of Common Pleas of Susquehanna County, Pennsylvania captioned Margaret Stinavage-Kipps v. Ronald W. Kipps, No. 2012-2213-CP ("State Court Action").

4.  On March 10, 2017, the Court of Common Pleas of Susquehanna County, Pennsylvania ("State Court") entered an order ("2017 Equitable Distribution Order") overruling and sustaining certain objections of both the Plaintiff/Debtor and the Defendant/Wife to a November 15, 2016 Report and Recommendations submitted by the Divorce Master regarding the equitable distribution of assets in the divorce proceeding.  See 2017 Equitable Distribution

---

[4]     Docket entries in the main bankruptcy case are noted as "BK Dkt." and all other docket entries refer to this Adversary Proceeding ("Dkt.").

Order; Dkt. # 82-1. The 2017 Equitable Distribution Order directed that the Debtor, inter alia, convey the jointly owned real property "held [in] New York State" and the 9.53 acres located in Clifford Township (collectively "Property") to the Defendant and make an "equalization payment" to the Defendant in the amount of $419,871.09 within 90 days of the date of the Order.

5. The Debtor appealed the 2017 Equitable Distribution Order to the Superior Court of Pennsylvania and the Superior Court affirmed. On or about July 25, 2018, the Debtor filed a Petition For Allowance of Appeal to the Pennsylvania Supreme Court, and on February 4, 2019, the Pennsylvania Supreme Court denied the Petition For Allowance of Appeal. See Amended Answer, Ex. C; Dkt. # 52.

6. On January 30, 2019, the State Court issued an order freezing all bank accounts of the Debtor up to an amount of $80,000.00 and scheduled a hearing for May 3, 2019 on the Defendant's Emergency Petition For Special Relief. See Dkt. # 82-2.

7. By letter dated April 22, 2019, the Debtor notified the Defendant's State Court attorney that the Debtor had filed bankruptcy. Dkt. # 85-1, ¶1, Ex. H.

8. On April 25, 2019, the State Court held a hearing on the Defendant/Wife's (i) Motion to Compel the execution of deeds and (ii) Emergency Petition for Special Relief relating to the bank accounts. See April 25, 2019 Transcript at 3; Dkt. # 85-3, Ex. A.

9. On April 26, 2019, the Debtor filed a Suggestion of Bankruptcy in the State Court Action. See Dkt. # 85-1, ¶ 2, Exhibit G.

10. On May 3, 2019, the State Court conducted a hearing and issued two separate orders each dated May 3, 2019. One order granted the Defendant/Wife's petition seeking the Susquehanna County Prothonotary (on behalf of the Plaintiff/Debtor) to execute certain deeds in favor of the Defendant/Wife; and a second order scheduled a hearing for June 18, 2019, to

determine whether the Plaintiff/Husband should be held in criminal contempt for his prior actions and conduct in the divorce proceedings which "attack the dignity and integrity of this Court's Order (dated January 30, 2019)." See Dkt. #'s 82-3 & 82-4, Exs. C & D.

11.     The State Court found that, based on its concurrent jurisdiction with federal bankruptcy courts over determinations regarding the applicability of §362, the automatic stay did not apply to ministerial acts, including the execution of deeds necessary to effectuate the transfer of the marital property awarded pursuant to the 2017 Equitable Distribution Order. See May 3, 2019 State Court Order, n. 1.

12.     On June 18, 2019, the Defendant/Wife complied with this Court's June 17, 2019 Order directing that the Plaintiff/Debtor's frozen accounts be released. See Dkt. # 15.

13.     This Court (Judge Opel) determined that the State Court criminal contempt proceeding was excepted from the automatic stay pursuant to §362(b)(1). See June 17, 2019 Order, ¶15.

14.     On June 18, 2019, the State Court found the Plaintiff/Debtor guilty of criminal contempt and fined him $2,550.00. See Dkt. # 85-3, Ex. K.

15.     On July 1, 2019, the Defendant filed a Proof of Claim No. 5 ("Claim") in the amount of $447,964.28 based the 2017 Equitable Distribution Order. [5]

---

[5]     The Claim is comprised of the equalization payment of $419,871.09 plus interest of $28,093.19 for a total of $447,964.28. The 2017 Equitable Distribution Order also provided that if the Debtor failed to pay, the Defendant would be entitled to a first priority mortgage lien against 186.65 acres in Clifford Township and 3.18% per annum interest payable over a 10-year period.

Case 5:19-ap-00064-MJC    Doc 89    Filed 03/31/22    Entered 04/01/22 07:33:09    Desc
Main Document    Page 6 of 23

# V.  LEGAL ANALYSIS

## A.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056): "The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." E.g., Steele v. Cicchi, 855 F.3d 494, 500 (3d Cir. 2017); Transguard Ins. Co. of Am. Inc., v. Hinchey, 464 F. Supp. 2d 425, 429 (M.D. Pa. 2006).  Thus, the inquiry on a motion for summary judgment is to determine whether there is a disputed issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986); Hinchey, 464 F. Supp. 2d at 430.  "A dispute of material fact is 'genuine' only if the evidence 'is such that a reasonable jury could return a verdict for the non-moving party.'" Holbrook v. Jellen, 2017 WL 4401897, at *4 (M.D. Pa. Mar. 8, 2017) (quoting Anderson, 477 U.S. at 248).

The moving party has the initial burden to demonstrate "the absence of a genuine issue of material fact." United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the moving party meets this initial burden, then the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  On summary judgment, the court must draw all reasonable inferences in favor of the non-moving party.  United States v. 717 S. Woodward St., 2 F.3d 529, 533 (3d Cir. 1993).

When the moving party has the burden of proof at trial on the underlying claim, the Third Circuit Court of Appeals characterized the standard as more stringent, explaining that the moving party must establish that no reasonable jury could find for the non-moving party in essence by

producing enough evidence to justify a directed verdict in its favor. <u>Donovan</u>, 661 F.3d at 185; <u>Kahle v. Roemmele (In re Roemmele)</u>, 2011 WL 4804833, at *4 (Bankr. E.D. Pa. Oct. 11, 2011).

When the moving party does not carry the burden of proof at trial, the moving party has the initial burden of showing the absence of a genuine issue of material fact. <u>Roemmele</u>, 2011 WL 4804833, at *4. The moving party "has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." <u>Nat'l State Bank v. Fed. Reserve Bank of New York</u>, 979 F.2d 1579, 1582 (3d Cir. 1992) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986)). In this proceeding, the Defendant as the moving party is required to establish that the Plaintiff has not supported one or more elements of his claim under §362(k) or that the undisputed evidence negates an element of the claim.

## B.    THE PARTIES' CONTENTIONS

The Plaintiff asserts that the Defendant violated the automatic stay by (i) refusing to release the frozen accounts after the filing of the bankruptcy petition; and (ii) by participating in the State Court Action post-petition, where the State Court explicitly found that it was exercising "concurrent jurisdiction" in finding that that the automatic stay did not apply and ordered that certain deeds be executed transferring ownership of real property from the Plaintiff to the Defendant based upon the 2017 Equitable Distribution Order. The Defendant argues that there are no genuine issues of material fact, her actions were proper, and she is entitled to summary judgment because (i) there is no obligation to release a pre-petition levy, and (ii) the Defendant cannot be found liable for a willful stay violation where the State Court specifically found that the stay did not apply. Given the parties submissions relating to the Motion, the Court finds that there are no issues of material fact outstanding.

8

C.    THE AUTOMATIC STAY

a.    <u>General Principles</u>

The Plaintiff's Amended Complaint asserts claims against the Defendant for violating the automatic stay under §362.  Somewhat inexplicably, the Amended Complaint does not assert any specific sub-section of §362 that has been violated, and the Plaintiff's brief likewise offers no specificity as to the claims.  <u>See</u> Dkt. # 85.  Despite the defective pleadings and in order to not delay the decision on this matter any further, the Court will consider each relevant subsection of §362(a).[6]

Section 362(a) provides a fundamental protection of the debtor in bankruptcy and operates as an automatic stay against certain actions.  It provides, in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> >
> > (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> >
> > (4) any act to create, perfect, or enforce any lien against property of the estate;

---

[6]    The Court will exclude §362(a)(7) and (8) from its consideration as those subsections do not appear to be relevant under the facts of this proceeding.

9

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. §362(a)(1)-(6).

The automatic stay is a mechanism under the Bankruptcy Code that provides broad protection by freezing the status quo which in effect bars and nullifies post-petition actions in non-bankruptcy cases against the debtor or property of the estate. Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n (In re Hillis Motors), 997 F.2d 581, 585 (9th Cir. 1993). The automatic stay not only protects a debtor by granting a breathing spell from creditors but it "also protects creditors as a class from the possibility that one creditor will obtain payment on its claim to the detriment of all others." Id.; City of Chicago, Illinois v. Fulton, 141 S. Ct. 585, 589 (2021) (automatic stay "benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others"); In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 637 (3d Cir. 1998) (absent automatic stay, creditors would be able to pursue their own remedies to the detriment of other creditors).

### b.      Elements of Claim for Violation of Automatic Stay

To recover for a violation of the automatic stay, a debtor must show by a preponderance of the evidence that: "(1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and (3) the violation caused actual damages." Kaushas v. Popple Constr., Inc. (In re Kaushas), 616 B.R. 57, 62 (Bankr. M.D. Pa. 2020) (citing In re Linsenbach, 482 B.R. 522, 526 (Bankr. M.D. Pa. 2012)). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the

stay be intentional." Kaushas, 616 B.R. at 62 (quoting In re Lansdale Family Rests., Inc., 977 F.2d 826, 829 (3d Cir. 1992)). Therefore, a creditor commits a willful violation of the stay, if it acts with knowledge that the bankruptcy petition has been filed. Boltz-Rubinstein v. Bank of Am. (In re Boltz-Rubinstein), 596 B.R. 494, 503 (Bankr. E.D. Pa. 2019) (quoting In re Lansaw, 853 F.3d 657, 664 n.4 (3d Cir. 2017)). A good faith belief that one's actions did not violate the stay is not a defense. In re Webb, 472 B.R. 665, 2012 WL 2329051 at *15 (B.A.P. 6th Cir. 2012) (citing TranSouth Fin'l Corp. v. Sharon (In re Sharon), 234 B.R. 676, 688 (B.A.P. 6th Cir. 1999)). A debtor may recover "actual damages, including costs and attorneys' fees" for a willful violation of the stay. 11 U.S.C. §362(k)(1).

## D. THE DEFENDANT DID NOT VIOLATE THE STAY WITH RESPECT TO THE FROZEN BANK ACCOUNTS

The first cause of action asserted in the Amended Complaint is merely titled as "Funds on Deposit." It relates to the Defendant's refusal to "voluntarily" release the bank accounts post-petition. [7] As stated above, the Amended Complaint does not identify any specific sub-section of §362(a) that has been violated, simply stating:

> 8. Despite repeated demands, FNCB has failed to release said accounts from the levy without the approval of the Defendant and/or her counsel.

> 9. That the Defendant has refused to take any steps to release the levy and has continued to act in willful violation of the automatic stay to the great and ongoing detriment of the Plaintiff.

---

[7] The State Court froze the Debtor's bank accounts pursuant to its January 30, 2019 Order, thus, this is not a typical garnishment action by a creditor. The State Court directed that the accounts be frozen "up to an amount of $80,000.00" which represented funds the Debtor received in connection with a lease and sale option of 400 acres of land in New York after the property had been awarded to Ms. Stinavage-Kipps. Based on the State Court record, it appears the Debtor admitted to receiving $40,000.00 in 2017 and an additional $40,000.00 in 2018 for the lease/purchase of the property without Ms. Stinavage-Kipps' approval. June 18, 2019 Tr. at 28-32; Dkt. # 85-3. This Court could not find any disclosure or mention of a lease or sale of property in the Debtor's Schedules, Dkt. # 28, or Statement of Financial Affairs, Dkt. # 29, or the receipt of those funds.

11

On October 28, 2021, at oral argument on the Motion, Counsel for the parties acknowledged the United States Supreme Court's <u>Fulton, supra,</u> decision (relating to creditor's refusal to release a pre-petition impounding of automobiles) and this Court's then recent decision in <u>In re Margavitch</u>, 2021 WL 4597760 (Bankr. M.D. Pa. Oct 6, 2021), which dealt with similar allegations regarding a levied bank account.  Much like the facts in <u>Fulton</u> and <u>Margavitch</u>, there is no allegation here of any affirmative action taken as to the frozen accounts after the filing of the bankruptcy petition.  The Plaintiff asserts only that the Defendant refused to release the frozen accounts.

### 1.  The Defendant Did Not Violate §362(a)(3)-(6)

The Court will turn first to §362(a)(3)-(6) and consider those subsections together.  The Supreme Court in <u>Fulton</u> specifically limited its decision to interpreting §362(a)(3).[8]  In discussing <u>Fulton</u>, this Court observed that

> The Supreme Court determined that the "most natural reading" of the operative terms of § 362(a)[(3)], <u>i.e.</u>, "stay," "act," and "exercise control," would be a prohibition on affirmative acts that disturb the status quo of estate property as of the petition date.  <u>Id.</u> at 590.  The Supreme Court further determined that the language of (a)(3) implies something more than merely having control of, or retaining power over, estate property.  In reaching its holding, the Supreme Court rejected the debtors' argument that § 362(a)(3) covers the mere retention of estate property because to do so would render the turnover provision in § 542 superfluous and essentially transform § 362(a)(3) into a blanket turnover provision.  The Supreme Court found that this was not the intent of Congress when it added the phrase "or to exercise control of property of the estate" in 1984 amendments.  <u>Id.</u> at 591-92.  The Supreme Court specifically found that § 362(a) imposes no "turnover obligation" and is not to be construed as an "enforcement arm of sorts for § 542(a)...."  <u>Id.</u> at 592.  Furthermore, the Supreme Court found that the debtors' interpretation of § 362(a)(3) would render the

---

[8]     See <u>Fulton</u>, 141 S. Ct. at 592 ("Nor do we settle the meaning of other subsections of §362(a).").

commands of § 362(a)(3) and § 542 as contradictory given the fact that § 542 carves out specific exceptions to the turnover command. Id. at 591.

Margavitch, 2021 WL 4597760 at *5 (footnotes omitted).

Because subsections (a)(4), (5), and (6) also all begin with the phrase: "any act to," it follows that Fulton's reasoning regarding §362(a)(3) can be applied to these other subsections. Fulton determined that an affirmative act is likely necessary to violate §362(a)(3).[9] Therefore, as this Court found in Margavitch, it logically follows that an affirmative post-petition "act" is necessary to constitute a violation of those subsections. Margavitch, 2021 WL 4597760, at *6. Because the Defendant did not take any post-petition action to "control" the accounts that had been frozen and the Defendant did not gain any advantage with respect to the Debtor or property of the estate, the mere retention of the status quo of a valid pre-petition state court attachment or lien without more, is not a violation of §362(a)(3) - (6). See id. at *7.

Here, the State Court imposed a pre-petition freeze on the Debtor's bank accounts. This Court continues to adhere to the view that based on the reasoning of Fulton, there is no obligation set forth in §362(a) that compels a creditor to "turnover" or release a valid lien once a bankruptcy is filed.[10] The Defendant was thus, not required to withdraw the attachment because to do so would put her in a more disadvantageous position than she had been as of the petition

---

[9] The Supreme Court's holding is qualified slightly: "We do not maintain that these terms definitively rule out the alternative interpretation adopted by the court below and advocated by respondents. As respondents point out, omissions can qualify as 'acts' in certain contexts." Fulton, 141 S. Ct. at 590. See also In re Iskric, 496 B.R. 355, 362 (Bankr. M.D. Pa. 2013) (where creditor was found to violate stay and discharge injunction under §524(a)(2), by failing to seek a vacatur of state court civil contempt order which resulted in issuance of bench warrant against debtor and her subsequent incarceration in county prison for several days).

[10] The Fulton Court specifically set forth a debtor's right to seek a "turnover" under 11 U.S.C. § 542 which is separate from a §362(a) claim. Fulton, 141 S. Ct. at 590-591. In fact, the Debtor here did file a post-petition motion seeking a release of the funds. See Dkt. # 6.

13

date and she was entitled to maintain the status quo.  Id. at *6.  The Defendant merely

maintained the status quo as of the petition date, which did not violate the stay.

### 2. The Defendant Did Not Violate §362(a)(1)-(2)

Again, although the Plaintiff did not plead a violation of any specific sub-section of

§362(a), it would appear that §362(a)(1) or (a)(2) might be more applicable.[11]  Section 362(a)(1)

prohibits the "commencement or continuation" of a judicial, administrative, or other action or

proceeding against the debtor and (a)(2) prohibits the "enforcement" of a pre-petition judgment

against the debtor.

> Subsection (a)(1) is very broad in its reach and covers all
> types of legal proceedings.  See Galmore v. Dykstra (In re
> Galmore), 390 B.R. 901, 910 (Bankr. N.D. Ind. 2008) ("Every
> proceeding of a judicial or quasi-judicial nature is affected."
> (quoting In re Joe DeLisi Fruit Co., 11 B.R. 694, 695 (Bankr. D.
> Minn. 1981))).  For purposes of subsection (a)(1), "continuation"
> has generally been interpreted to mean the "carrying forward … of
> a proceeding that has already begun."  Taylor v. Slick, 178 F.3d
> 698, 702 (3d Cir. 1999).  It does not cover actions taken to
> continue, i.e., postpone a proceeding that preserves the status quo
> until the bankruptcy process has concluded.  Id.

> * * *

> [Section] 362(a)(2) stays the enforcement of a pre-petition
> judgment against a debtor or property of the estate. §362(a)(2).
> "Enforcement" is defined as "[t]he act or process of compelling
> compliance with a law, mandate, command, decree, or agreement."
> Black's Law Dictionary (11th ed. 2019).

Margavitch, 2021 WL 4597760, at *7-8.

While divorce counsel for the Defendant did appear at the post-petition State Court

proceedings, Counsel did not seek any affirmative relief with respect to the frozen accounts, i.e.,

---

[11]     The Defendant's meandering 35 page brief in response to the Motion likewise does not identify
any specific section of the Code.

14

to continue or enforce the garnishment/levy process.[12]  Because there is no evidence that there was a change in the status quo, the Court finds that there was no violation of §362(a)(1) and (2).[13]  Accordingly, summary judgment shall be granted in favor of the Defendant as to the Plaintiff's first cause of action labeled "Bank Accounts."

## E.     THE DEFENDANT DID NOT VIOLATE THE STAY WITH RESPECT TO THE REAL PROPERTY

The Plaintiff's second cause of action is titled "Real Property."  Like the first claim, the Plaintiff does not identify what section of §362(a) was violated, nor does he identify any damages.[14]  This claim relates to the State Court's Order directing the Susquehanna County Prothonotary to execute the deeds transferring the real property awarded to the Defendant pursuant to the 2017 Equitable Distribution Order, and the Defendant pursuing a contempt finding against the Debtor/Plaintiff.  After a full review of the transcripts of the proceedings held in the State Court Action, it's clear that the State Court Judge went forward with these proceedings not only to allow for the transfer of the real property but also because the State Court was not pleased with the Debtor's conduct in the divorce proceedings and pursued a criminal contempt proceeding due to the Debtor

---

[12]     This Court reviewed the transcripts of the State Court proceedings held on April 25, 2019, Dkt. # 85-3, Ex. A, and May 3, 2019, Dkt. #85-3, Ex. D.  Counsel for the Defendant acknowledged that the frozen accounts were subject to the §362 stay (Ex. A at pp. 4 and 10).  The State Court agreed and was more concerned with the Debtor's conduct in disobeying its order and moving forward on seeking contempt.

[13]     Further, at the May 3, 2019 hearing, the State Court specifically found that any related financial matters regarding the Debtor would be stayed but that it would go forward with a criminal contempt proceeding due to "a course of conduct by Mr. Kipps which attack[s] the dignity and integrity of this Court's Order …"  May 3, 2019 Tr. at 12, Dkt. # 85-3.

[14]     The closest this Court can find as to an averment of damages is at ¶14 of the Amended Complaint where the Plaintiff states that the involuntary conveyance of real property in Susquehanna County has caused "loss and detriment" to him.  Debtor's Brief, Dkt. # 85-4 at 22, sets forth certain unspecified damages but that is not verified by any affidavit or otherwise properly supported.

> demonstrating a course of conduct … which attack[s] the dignity
> and integrity of this Court's order, and the Defendant (Debtor) now
> having failed to appear at two separate proceedings the first being
> a hearing on April 25, 2019 and the second being today's date, the
> Court hereby schedules a criminal contempt hearing to be held on
> June 18, 2019, commencing at 11:00 a.m. The Defendant, Ronald
> W. Kipps, is advised that should he fail to appear for the criminal
> contempt hearing, a Bench Warrant will be issued for his arrest.

May 3, 2019 State Court Order. Given the convoluted nature of the Plaintiff's claim, as alleged, the Court will break it down into two separate sections – the Defendant/Wife's conduct in connection with (1) the post-petition execution of deeds, and (2) the pursuit of the contempt finding against the Debtor.

### 1. **The Post-Petition Court Ordered Real Property Transfers**

As set forth above, the 2017 Equitable Distribution Order directed the Plaintiff/Husband to convey the Property to the Defendant/Wife. Despite this Order, and without any apparent justification, the Debtor failed to execute the deeds, which necessitated the Defendant's Motion to Compel in the State Court Action. The State Court entered an Order on January 30, 2019 scheduling a hearing for May 3, 2019. The Debtor filed his bankruptcy case on April 22, 2019 and timely advised the State Court and the Defendant's Counsel of the filing.

Notwithstanding the filing, the State Court held a hearing on April 25, 2019 on the Defendant/Wife's petitions seeking execution of the deeds and relating to the freezing of the Debtor's bank accounts. See Transcript at Dkt. # 85-3, Ex. A. The Debtor's Counsel and divorce counsel for the Defendant/Wife appeared. The Debtor's Counsel confirmed that the Debtor had filed bankruptcy and informed the State Court that all matters were stayed pursuant to §362. Id. at 3-4. The State Court disagreed, stating that "the deed situation seems to me to be the one that should not be stayed … [b]ecause she's (Defendant) the owner of that property by an Opinion that's been confirmed by the Superior Court" and "[c]ertainly Mr. Kipps is not

16

prejudiced because it's not his property. It wouldn't be part of the bankruptcy – bankrupt estate at all… This is not property of the estate." April 25, 2021 Tr. at 4-5. In response to the Debtor's argument that the Property should be considered property of the bankruptcy estate, the State Court pointed out that title to the Property remained in the Debtor's name "[o]nly because of his willful misconduct in refusing to comply with this Court's Order." Id. at 6-7.[15]

### a. The State Court had Concurrent Jurisdiction

In its May 3, 2019 Order, the State Court correctly found that it had concurrent jurisdiction to determine the applicability of the automatic stay imposed under §362.[16] It has long been recognized that a state court is capable and empowered to determine whether the automatic stay under §362 is applicable in a matter before it. See Brock v. Morysville Body Works, Inc., 829 F.2d 383, 387 (3d Cir. 1987). In Brock, the Third Circuit found that it had jurisdiction over a federal employer/employee enforcement matter notwithstanding the pending Chapter 11 proceeding of the employer. The Court stated:

> We have no difficulty deciding that we may determine the applicability of the automatic stay. As the Second Circuit has said, "[w]hether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending ... and the bankruptcy court supervising the reorganization." The court in which the litigation claimed to be stayed is pending thus "has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."

---

[15]      The Property was in the names of both parties as of the petition date.

[16]      The Bankruptcy Court has the power to review the State Court's determination regarding the applicability of the automatic stay as an exception to the Rooker-Feldman doctrine under Kalb v. Feuerstein, 308 U.S. 433, 438–40, 60 S. Ct. 343, 345–46 (1940). Accord Raymark Indus., Inc. v. Lai, 973 F.2d 1125 (3d Cir. 1992).

17

<u>Brock</u>, 829 F.2d 383, 387 (3d Cir. 1987) (citations omitted). Although <u>Brock</u> was a federal court deciding whether it had jurisdiction to determine the applicability of the stay, this rationale has been extended to allow state courts to have concurrent jurisdiction. <u>See</u> <u>In re Grigg</u>, 2013 WL 5771870 at *14 (Bankr. W.D. Pa. 2013); <u>Cortellessa v. Cortellessa</u>, 2006 WL 1997407 at *2 (Bankr. E.D. Pa. June 9, 2006); <u>Pennsylvania Department of Environmental Resources v. Ingram</u>, 658 A.2d 435, 438 (Pa. Commw. Ct. 1995).

### b. Execution of the Deeds was a Ministerial Act that Did Not Violate the Automatic Stay

The State Court was first confronted with the issue of the Debtor's bankruptcy filing at the April 25, 2019 hearing on the Defendant/Wife's two petitions: one requesting the execution of the deeds and the other requesting emergency relief as to the Debtor's bank accounts. The Debtor's Counsel appeared at the hearing to inform the State Court of the bankruptcy filing and to assert the Debtor's position that the State Court proceedings were therefore stayed. The State Court heard brief argument and indicated on the record its belief that the real property was not the Debtor's property or property of the bankruptcy estate, and the Defendant was the owner, based on the 2017 Equitable Distribution Order. <u>See</u> April 25, 2019 Tr. at 5-7. The State Court did not make a determination regarding the automatic stay until May 3, 2019. The State Court found:

> The equitable distribution award is now a final order and [the Defendant's] entitlement to ownership of that real property has been established.
>
> Prior to [the Debtor] filing his bankruptcy petition, [the Defendant's] counsel had prepared deeds in compliance with the equitable distribution award and forwarded said deeds to [the Debtor's] legal counsel. [The Debtor] refused to sign the deeds in compliance with March 10, 2017 final equitable distribution order and thereafter filed a bankruptcy petition. Given the facts presented in this case, the execution of the deeds as required under the March

18

> 10, 2017 equitable distribution order is a ministerial act that cannot
> be thwarted by [the Debtor's] obstinance prior to the filing of his
> bankruptcy petition or the automatic stay imposed under § 362 upon
> the filing of defendant's bankruptcy petition. Given [the Debtor's]
> refusal to execute the necessary deeds, the Susquehanna County
> Prothonotary has the power and authority to execute the deeds if
> directed to [sic] so by this court. See Friday v. Friday, 12 Phila. Co.
> Rep. 655, 568 (Phila. Ct. Common Pleas 1985); Miller v.
> DeSzirmay, 58 Pa. D. & C.2d 731, 734 (Pike Ct. Common Pleas
> 1971).

May 3, 2019 Order, n. 1.

The Plaintiff argues here that the State Court was incorrect and the Property was property of the estate and subject to the automatic stay. Regardless of whether the State Court was correct in its statement that **the Debtor's interest was extinguished** by the 2017 Equitable Distribution Order, the State Court correctly determined that the automatic stay did not apply to ministerial acts and ordering the Prothonotary to execute the deeds was ministerial. In taking this position, the State Court relied upon In re Rugroden, 481 B.R. 69, 78 (Bankr. E.D. Cal. 2012). In Rugroden, the debtor moved for sanctions against the Internal Revenue Service and pre-petition tax sale purchaser where the debtor filed his bankruptcy case after the tax sale but prior to the expiration of a redemption and period and execution of the deeds. The Rugroden Court, after analyzing what constitutes a "ministerial act," found that the applicable statute required the IRS to execute the deeds in favor of the purchaser and as such, constituted a ministerial act which did not violate the stay. Id. at 78-79.[17]

---

[17] At the May 3, 2019 hearing, the State Court made a specific finding "that [the] automatic stay does not apply to ministerial acts" and that the Prothonotary may execute the deeds after a 30 day notice to the Debtor. May 3, 2019 Tr. at 4-5.

Given the pre-petition 2017 Equitable Distribution Order directing conveyance of the Property to the Defendant, and the Debtor's "gamesmanship,"[18] clearly the Property was awarded to the Defendant in 2017 and should have been conveyed. Accordingly, this Court agrees with the State Court in this instance that it properly exercised concurrent jurisdiction and that the execution of the deeds by the Prothonotary was a "ministerial act" not barred by the automatic stay in order to uphold the "dignity and integrity" of the State Court's Order.

## 2. **Did the Contempt Proceeding violate the Stay?**

This Court finds it questionable to construe the Amended Complaint as asserting a proper cause of action against the Defendant for violating the stay with respect to the contempt proceedings in the State Court Action. The Amended Complaint (under the count captioned "Real Property") states:

> 14. That contrary to the provisions of 11 U.S.C. [§§]362 and 1301, the Defendant, Margaret's (sic) Stinavage-Kipps, caused or seized by involuntary conveyance real property located in Susquehanna County and has retained that property to the loss and detriment of Ron Kipps.

> 15. Furthermore, despite being fully aware of the Stay, the Defendant continued to pursue her relief request before the Court of Common Pleas, which resulted in said Court issuing an Order dated May 3, 2019, scheduling a criminal contempt hearing for the Debtor because the Debtor (sic), even to the point of threatening a bench warrant being issued against the Debtor. …

> 16. Defendant's continued pursuits against assets of the Bankruptcy Estate not only are in direct violation of the automatic stay, but have not (sic) reached the point where the Debtor was on the verge of being held in criminal contempt by a Common Pleas Court despite the lack of a foundation for such sanction.[19]

---

[18]    The State Court referred to the Debtor's delay tactics as "gamesmanship" for, inter alia, refusing to sign the deeds to the real property. April 25, 2019 Tr. at 13.

[19]    Although the Amended Complaint states "not" in paragraph 16, the Court will assume that the Plaintiff did not mean to include that word.

Amended Complaint at ¶¶14-16. Although not contained anywhere in the Amended Complaint or in the Plaintiff's Statement of Material Facts, it is apparent from the record that the State Court held a contempt hearing on June 18, 2019 and found the Debtor to be in criminal contempt.[20] Since this was not pleaded, there is no mention of it in the Defendant's Motion, and Judge Opel ordered that the contempt hearing could proceed in his June 17, 2019 Order, Dkt. # 12, the Court will not consider that hearing. However, there is a reference to the May 3, 2019 hearing and the Court will consider the facts relating to that proceeding.

In connection with the contempt proceeding, the State Court stated, "[i]t has nothing to do with his financial situation; it has to do with whether or not he's disobeyed a court order willfully." April 25, 2019 Tr. at 11. As alluded to above, the State Court clearly had tired of the "gamesmanship" employed by the Debtor in the divorce proceeding which had been pending since 2012. With full knowledge of the bankruptcy filing and the imposition of the automatic stay, the State Court held the previously scheduled hearing on May 3, 2019. The Defendant's divorce counsel appeared but neither the Debtor nor his counsel appeared. At the hearing the State Court indicated that "it's basically the Court enforcing it. He's going to have to appear before me and answer to what he's done." May 3, 2019 Tr. at 13. The issue of contempt was clearly driven by the State Court's frustration with the Debtor/Plaintiff and not by the Wife/Defendant.

"The majority of courts that have considered this issue … have held that the enforcement of a civil contempt order is outside of the scope of the automatic stay provided that the primary purpose of the issuing court is to uphold the court's dignity." Lowery v. McIlroy & Millian (In

---

[20]      A copy of the transcript from the June 18, 2019 State Court contempt hearing is attached to the Plaintiff's response at Dkt. # 85-3, p.65. The Debtor's Counsel and the Defendant's divorce counsel appeared at this hearing. Based upon Judge Opel's Order from the day before (Dkt 12), both counsel consented to the State Court moving forward with the contempt hearing. Id. pp. 2-3.

re Lowery), 292 B.R. 645, 649-50 (Bankr. E.D. Mo. 2003) (citing NLRB v. Sawulski, 158 B.R. 971, 977 (E.D. Mich. 1993); O'Brien v. Nachtigal (In re O'Brien), 153 B.R. 305, 308 (D. Or. 1993); U.S. Sprint Communications v. Buscher, 89 B.R. 154, 156 (D. Kan. 1988); Siskin v. Complete Aircraft Serv. (In re Siskin), 258 B.R. 554, 565–66 (Bankr. E.D.N.Y. 2001); Lori v. Lori (In re Lori), 241 B.R. 353, 355 (Bankr. M.D. Pa. 1999); In re Dunham, 175 B.R. 615, 617 (Bankr. E.D. Va. 1994); Rook v. Rook (In re Rook), 102 B.R. 490, 493–94 (Bankr. E.D. Va. 1989)). If a state court issues a contempt order that predominantly focuses on upholding a previous order of that state court, it may not violate the automatic stay. Lowery, 292 B.R. at 650. However, a contempt order or a civil confinement order, focused on receiving funds to satisfy a money judgment, "pursue a 'collection motive,'" or to excessively embarrass or harass a judgment debtor does violate the automatic stay. Rook, 102 B.R. at 493 (quoting Int'l. Distribution Ctrs., Inc. v. Walsh Trucking Co. Inc. (Int'l. Distribution Ctrs. Inc.), 62 B.R. 723, 729-30 (Bankr. S.D.N.Y. 1986)). To make this determination, a bankruptcy court must look at the totality of the circumstances. Lowery, 292 B.R. at 650 (citing Lori, 241 B.R. at 355).

Instantly, with the record before this Court, the State Court was very specific in finding that the contempt proceeding would be criminal in nature and would be to address the Plaintiff's course of conduct which "attack[ed] the dignity and integrity of the Court's Order" and for failing to attend two (2) hearings before the State Court. See May 3, 2019 Order ¶3. Further, from the record, it is apparent that the Defendant's counsel did not materially participate in the contempt issue and that was driven primarily by the State Court Judge. Given the clear and unambiguous finding by the State Court, the Defendant cannot be held to have violated the stay with respect to the May 3 proceeding. Accordingly, summary judgment shall be granted in favor of the Defendant as to the Plaintiff's second cause of action labeled "Real Property."

### VI. CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment shall be granted. An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: March 31, 2022